441 A.2d 388

**Josephine H. KOZLOWSKI, Appellant,**

v.

**PENN MUTUAL INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed Feb. 5, 1982.

David L. Marshall, Norristown, for appellant.

Joy E. Pollock, Philadelphia, for appellee.

Before BROSKY, WATKINS and MONTGOMERY, JJ.

BROSKY, Judge:

Appellant, Josephine Kozlowski, filed an action for declaratory judgment requesting a judicial interpretation of her

homeowner's insurance policy. The case was submitted to the court below upon an agreed statement of facts. The court below entered an opinion and order holding that the insurance policy did not cover the loss sustained by appellant. It is from this ruling that appellant has taken this appeal. We affirm.

The facts are as follows. In May, 1978, appellant purchased a homeowner's insurance policy from Penn Mutual, with coverage to begin May 25, 1978.[1] At that time, appellant lived at 3337 Coral Street in a row house. On August 3, 1978, the curb valve at the water main to the service line leading to 3335 Coral Street burst, releasing water which seeped into and flooded appellant's basement. Thereafter, appellant filed a claim for her property loss with appellee and was notified that the claim was disallowed because it was not a loss covered by appellant's policy. The policy provides as follows:

> This policy insures under: COVERAGE A—DWELLING and COVERAGE B—APPURTENANT STRUCTURES against all risks of physical loss to the property covered . . . except as otherwise excluded or limited. COVERAGE C—UNSCHEDULED PERSONAL PROPERTY against direct loss to the property covered by the following perils as defined and limited, except as otherwise excluded.
>
> *     *     *     *     *     *
>
> 15. Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance but excluding loss to the appliance from which the water or steam

---

1. There is some dispute concerning whether appellant's policy was an "HO2" or an "HO3." Appellant claims to have purchased an "HO3" policy but to have been issued an "HO2" policy instead. In her pleadings, appellant relied upon the language of an "HO3" policy. We fail to see the relevance of the distinction between the two policies, since the terms in question are contained in both, albeit numbered differently. However, for the purposes of this opinion, we will rely upon the language of the "HO3" policy, as did the court below in reaching its decision.

escapes. This peril does not include loss caused by or resulting from freezing.

Under "ADDITIONAL EXCLUSION" the policy states that it does not insure against loss . . .

1. Caused by, resulting from, contributed to or aggravated by any of the following:

a. flood, surface water, waves, tidal water, or tial waves, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not:

b. water which backs up through sewers or drains; or

c. *water below the surface of the ground including that which exerts pressure on or flows, seeps or leeks through sidewalks, driveways, foundations, walls, basement or other floors or through doors, windows or any other openings in such sidewalks, driveways, foundations, wall, or floors* ;

unless loss by fire or explosion ensues and this company shall then be liable only for such ensuing loss, but these exclusions do not apply to loss by theft . . . [Emphasis added.]

Appellant's central contention is that Paragraph 15 under "PERILS INSURED AGAINST" covers her loss here. She further argues that appellee has not met its burden of proof with respect to the applicability of Exclusion 1. c. under "ADDITIONAL EXCLUSIONS."

Appellant would have us interpret the words . . . "a plumbing system" contained in Paragraph 15 to mean *any* plumbing system. She submits that the water main, curb valve and service line leading to the house next door are part of "*a* plumbing system." The court below found that the policy "was meant to insure [the appellant] only against water damage caused by sources directly within or appurtenant to *her home.*" (Emphasis added.) We agree.

In the leading Pennsylvania case dealing with this question, *Fine v. Underwriters of Lloyd's of London,* 239 F.2d 362 (3d Cir. 1956), it was held that water escaping from "plumbing systems" means water escaping from the plumb-

ing system on the insured premises, and not from "any" plumbing system. In *Fine*, recovery was sought by a clothing store for loss to fabric damaged by water which leaked through the store buildings foundation wall and into the basement, resulting from a break in the plumbing system of an adjoining property. The policy in question provided: "Perils not included": not liable for loss by 'water damage' [defined as "the accidental discharge, leakage or overflow of water or steam from within . . . plumbing systems"] . . . caused directly or indirectly by (a) seepage, leakage or influx of water through building walls, foundations, basement floors . . . The court in *Fine* concluded that "a reading of the insurance contract before us shows that all of the water damage sources covered are obviously intended to be on or in, certainly related to, the assured's property . . . ." Id. at 364. Here, the cause of the water leakage was a burst valve at the water main to the service line belonging to the house next door, which line is unconnected to appellant's property.

Under appellant's interpretation of "a plumbing system," water seeping into appellant's basement from a burst valve two blocks away, rather than next door, would also be covered. However, the *Fine* court also recognized that the policy in question was designed by the insurer to provide for a limited amount of coverage, for losses which it could foresee. Otherwise, the insurer would have no control over the type of risks against which it was insuring. There would, in short, be no end to the coverage, and concomitantly, no need to provide for exclusions to coverage. It is clear from a reading of the entire policy here that appellee-insurer did not intend, nor did appellant contract for, such unlimited coverage.[2]

It is axiomatic that in order to recover on a policy of insurance, the insured must show that his claim comes within the coverage provided by the policy. *Miller v. Boston Insurance Company*, supra. Here, appellant has not met her burden of proving that the loss sustained by her is covered under the terms of her policy.

**2.** This was not an "all risks" policy. See *Miller v. Boston Insurance Company*, 420 Pa. 566, 218 A.2d 275 (1966).

Therefore, we do not find it necessary to discuss appellant's second contention, that appellee-insurer did not meet its burden of proving that the loss was excluded by the policy. It is well established that appellee bears the burden of proving that the loss is due to a hazard excluded from coverage. *Armon v. Aetna Casualty Co.*, 369 Pa. 465, 87 A.2d 302 (1952). Here, however, it is clear that the loss sustained by appellant was not a "peril insured against" within the meaning of Paragraph 15. Thus, it is unnecessary to examine whether the loss was specifically excluded by Exclusion 1 of the policy. We do find, however, that the exclusion clause in question does not contradict the coverage provided by Paragraph 15. Reading the policy as a whole, giving effect to all of its provisions, we hold that where, as here, the cause of the discharge, leakage or overflow of water is in the insured's own plumbing system, the exclusion does not apply; but that if the cause is *outside* that system, then the exclusion is applicable. See *Hallsted v. Blue Mountain Convalescent Center, Inc.*, 23 Wash.App. 349, 595 P.2d 574 (1979).

Since the cause of the water damage here was not within appellant's plumbing system, she cannot recover under the terms of the policy.

Order affirmed.