## Glover v. Wieder

*Thomas S. Nanovic,* for plaintiff.

*John J. Sylvanus,* for defendant Yorktowne Mutual Insurance Co.

LAVELLE, *P.J.*, May 15, 1990 — Plaintiff, Charles W. Glover, is seeking money damages from defendant Yorktowne Mutual Insurance Company under a homeowners insurance policy following damage to his mobile home caused by a backed-up sewage system.

Before the court are cross motions of both Glover and Yorktowne for summary judgment. After a careful review of the record, the briefs of counsel and oral argument, we shall enter summary judgment in favor of Yorktowne and against Glover.

## FACTS

On January 15, 1987, Glover's house was flooded and damaged as a result of backed-up sewage in the Oakwood Mobile Home Park. Unknown vandals placed scrap lumber into two clean-out pipes leading to the main sewer line for the mobile home park and this caused a sewage back-up within Glover's dwelling. The two clean-out pipes leading to the main sewer line are not located on Glover's property or leasehold.

At the time this incident occurred, Glover was insured by Yorktowne, and his policy provided coverage for, inter alia:

"Paragraph 9: Vandalism or malicious mischief, meaning only the willful and malicious damage to or destruction of the property covered. . . ."

The policy also contained the following exclusions:

"General Exclusions — 1. This policy does not insure against loss . . . caused by, resulting from, contributed to or aggravated by any of the following . . . (2) water which backs up through sewers or drains."

Glover's claim for indemnification under the terms of his homeowner's policy was denied by Yorktowne.

## DISCUSSION

The sole question for our determination is whether the damage to Glover's mobile home caused by sewage which backed-up in the sewer line due to off-site vandalism is covered by his policy. We hold that the damage is not covered.

We begin with the legal caveat that summary judgment can be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b). To determine whether summary judgment is appropriate, the court must "accept as true all well-pleaded facts in the non-moving party's pleadings, and give the non-moving party the benefit of all reasonable inferences to be drawn therefrom." *Alberici v. Tinari,* 374 Pa. Super. 20, 22, 542 A.2d 127, 127 (1988).

There is no dispute here as to the material facts.

Our interpretation of the language of the instant contract is circumscribed by well-settled law. First, the insurance contract must be construed in accordance with its plain, common and ordinary meaning; when the contract language is clear, the court must apply it as written and cannot rewrite the contract terms. *Adelman v. State Farm Mutual Automobile Insurance Co.,* 255 Pa. Super. 116, 386 A.2d 535 (1978).

Second, when a word or phrase is specifically defined within a contract, that definition controls in determining the applicability of the contract. See *Great American Insurance Co. v. State Farm Mu-*

*tual Automobile Insurance Co.,* 412 Pa. 538, 194 A.2d 903 (1963).

Glover asks us to interpret the definition of vandalism in paragraph 9 ". . .only the willful and malicious damage to or destruction of the property covered" to encompass acts of vandalism occurring *anywhere* which result in damage to or destruction of his property. Such a broad interpretation, in our view, distorts the plain meaning of the words and would go far beyond the risks which this homeowners policy was intended to cover.

The word "willful" means intentional. *Black's Law Dictionary* 1434 (5th ed. 1979). "Willful . . . damage to . . . the property covered" in our view, refers to acts of vandalism intentionally directed to or aimed specifically at the insured property. We interpret the vandalism clause to include coverage for damage caused by acts of vandalism intentionally directed at the insured property by known or unknown persons. The vandalism here was directed to sewage lines owned by Glover's lessor and not to Glover's property. Therefore, we find no coverage in his policy for the damages sustained by the sewage back-up.

Additionally, Glover's homeowner's policy was never intended to cover risks of vandalism from anywhere in the community or its environs. Such an interpretation is unreasonable.

*Koslowski v. Penn Mutual Insurance Co.,* 295 Pa. Super. 141, 441 A.2d 388 (1982) is instructive. The Superior Court interpreted policy language analogous to the instant case and found that no coverage existed for the damages sustained. There, a curb valve to the water main to the service line leading to a neighbor's property burst and released water which seeped into and flooded the insured's basement causing damage. The insurance policy pro-

vided that "overflow of water or steam from within a plumbing system" was a peril covered by the policy. The Superior Court affirmed the trial court's interpretation of the policy to cover only against water damage caused by sources directly within or appurtenant to her house and held the insured could not recover under the policy.

Some of the Superior Court's rationale is applicable here:

"Under appellant's interpretation of 'a plumbing system,' water seeping into appellant's basement from a burst valve two blocks away, rather than next door, would also be covered. However, the *Fine* court also recognized that the policy in question was designed by the insurer to provide for a limited amount of coverage, for losses which it could foresee. Otherwise, the insurer would have no control over the type of risks against which it was insuring. There would, in short, be no end to the coverage, and concomitantly, no need to provide for exclusions to coverage. It is clear from a reading of the entire policy here that appellee-insurer did not intend, nor did appellant contract for, such unlimited coverage."

Because we find that Glover's policy did not cover damage from sewage backing up into his mobile home, it is unnecessary to discuss whether the exclusionary language of the policy applies.

To recover on an insurance policy, it is axiomatic that the insured show that his claim falls squarely within the coverage provided by the policy. *Miller v. Boston Insurance Co.,* 420 Pa. 566, 218 A.2d 275 (1966). Here, the plain and clear language of the policy precludes Glover from recovering under the homeowners policy for the property loss he suffered.

For the foregoing reasons, we enter the following

## ORDER

And now, May 15, 1990, it is hereby ordered and decreed that the motion for summary judgment of defendant, Yorktowne Mutual Insurance Company, is hereby granted and the prothonotary is directed to enter judgment in favor of defendant Yorktowne Mutual Insurance Company and against plaintiff, Charles W. Glover.

It is further ordered and decreed that the motion for summary judgment of plaintiff, Charles W. Glover, is denied.