## Sibel v. Xpress Service Plaza Inc.

*L. Bruce Hoffman,* for plaintiff.
*Norman W. Briggs,* for defendant.

SOKOLOVE, *J.,* December 22, 1995—Plaintiff John Sibel has filed an appeal with the Superior Court from our order of September 22, 1995 entering summary judgment in favor of defendant General Agents Insur-

ance Company of America Inc. and against him. We offer this analysis of our decision to the appellate court.

After the pleadings are closed, summary judgment may be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b); *Carns v. Yingling,* 406 Pa. Super. 279, 594 A.2d 337 (1991). Summary judgment may be entered only in cases which are free from doubt. *Elder v. Nationwide Insurance Co.,* 410 Pa. Super. 290, 599 A.2d 996 (1991). In considering a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences. *Id.* A fact is material for purposes of summary judgment if it directly affects the disposition of the case. *Allen v. Colautti,* 53 Pa. Commw. 392, 417 A.2d 1303 (1980). All doubts as to the existence of a genuine issue of material fact are to be resolved against the granting of summary judgment. *Gilson v. Doe,* 143 Pa. Commw. 591, 600 A.2d 267 (1991).

When we applied these well-known standards to the matter at hand, defendant General Agents was entitled to summary judgment.

The core facts are not in dispute. Plaintiff filed his action for declaratory judgment against Xpress Service Plaza Inc. and General Agents. Plaintiff averred that he previously had instituted a separate civil action against Xpress and another corporation for damages to his motor coach. Allegedly, plaintiff had taken his motor coach to Xpress on May 17, 1990 to have it washed and cleaned. The agents and employees of Xpress ostensibly failed to dilute the liquid cleaner used on plaintiff's vehicle, causing extensive damage to the vehicle. At the time of this incident, Xpress was insured

by a certain insurance policy issued by General Agents. A copy of that policy was attached as an exhibit to plaintiff's complaint. Plaintiff, therefore, asked the court to hold that General Agents has a duty to defend Xpress in plaintiff's action against Xpress and to indemnify Xpress for any liability arising therefrom.

The issue before us was whether the applicable General Agents insurance policy provided coverage for the damage supposedly inflicted upon plaintiff's coach by Xpress. The parties agree upon the existence and terms of the policy; they dispute its interpretation and meaning in the circumstances of this case. This presents an issue for the court, not the trier of fact. Construction of a written contract of insurance is a matter of law for the court. *Timbrook v. Foremost Insurance Co.,* 324 Pa. Super. 384, 471 A.2d 891 (1984).

Upon careful study of the policy in question, we concluded unequivocally that the policy was clear and did not cover the loss sustained by plaintiff. The declaration page of the policy stated that

"This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those 'autos' shown as covered 'autos.' 'Autos' are shown as covered 'autos' for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS section of the garage coverage form next to the name of the coverage. Entry of a symbol next to LIABILITY provides coverage for 'garage operations.' "

The premium column contained three charges: one for LIABILITY, one under GARAGEKEEPERS for specified causes of loss coverage and another under GARAGEKEEPERS for collision coverage. No premium was charged for comprehensive coverage under GARAGEKEEPERS, nor for any of the categories under PHYSICAL DAMAGE, meaning that the insured, Xpress, had no coverage under this policy for those

types of losses. The covered autos column contained the number 29 next to LIABILITY and the number 30 for the two covered types of GARAGEKEEPERS coverage. Section I of the policy defined covered autos and their symbols as follows:

"(29) = NON-OWNED 'AUTOS' USED IN YOUR GARAGE BUSINESS. Any 'auto' you do not own, lease, hire, rent or borrow used in connection with your garage business described in the declarations. This includes 'autos' owned by your employees or partners or members of their households while used in your garage business.

"(30) = 'AUTOS' LEFT WITH YOU FOR SERVICE, REPAIR, STORAGE OR SAFEKEEPING. Any customer's 'auto' while left with your 'garage operations' for service, repair, storage or safekeeping. Customers include your employees or members of their households who pay for the services performed."

Plainly, the policy's coverage was limited to liability coverage and garagekeepers coverage for specified causes of loss and collision. The liability coverage extended only for non-owned "autos" used in the garage business, which did not include a customer's vehicle such as the plaintiff's. Furthermore, section II of the policy which provided for liability coverage contained an explicit exclusion at subsection B.12. for "property damage" to "work you performed" if the "property damage" results from any part of the work itself or from the parts, materials or equipment used in connection with the work. Even if plaintiff's vehicle could be considered a covered auto for liability coverage, which it obviously is not, the damage it sustained was admittedly caused by work performed by Xpress and was thereby excluded.

Plaintiff's vehicle was a covered auto for purposes of the garagekeepers coverage. That coverage, confined

to specified causes of loss and collision coverage, was set forth in section III.A.1. of the policy as:

"We will pay all sums the 'insured' legally must pay as damages for 'loss' to a covered 'auto' or 'auto' equipment left in the 'insured's' care while the 'insured' is attending, servicing, repairing, parking or storing it in your 'garage operations' under:

"(b) Specified causes of loss coverage. Caused by:

"(1) Fire, lightning, or explosion;

"(2) Theft; or

"(3) Mischief or vandalism.

"(c) Collision coverage. Caused by:

"(1) The covered 'auto's' collision with another object; or

"(2) The covered 'auto's' overturn."

Again, it is clear that the faulty washing of plaintiff's motor coach did not fall within any of these coverages. The policy purchased by Xpress provided for specific losses, not "all risks," unlimited or comprehensive coverage. See *Kozlowski v. Penn Mutual Insurance Co.,* 295 Pa. Super. 141, 441 A.2d 388 (1982). We note, also, that the garagekeepers coverage section expressly excluded faulty "work you performed." Section III.B.1.d.

Finally, with respect to the insurer's duty to defend, the policy logically exempted General Agents from any duty to defend lawsuits for losses or property damage which are not covered. See sections II.A., III.A.2.

It is axiomatic that in order to recover on a policy of insurance, the insured must show that his claim comes within the coverage provided by the policy. *Kozlowski v. Penn Mutual Insurance Co., supra.* Here, a plain reading of the subject policy's declarations, forms and schedules leaves no doubt that the plaintiff's claim is not covered. We must reject plaintiff's assertion that there is a genuine issue of material fact as to whether or not plaintiff's loss is covered. The bare language

of the policy clearly offers no coverage or duty to defend in this situation. Where the language of an insurance contract is clear and unambiguous, a court is required to give effect to that language. *Standard Venetian Blind Company v. American Empire Insurance Company,* 503 Pa. 300, 469 A.2d 563 (1983). Thus, the law mandated our entry of summary judgment for General Agents.