**AMERICAN CONCEPT INSURANCE COMPANY, a South Dakota corporation, Plaintiff,**

v.

**Ralph JONES, Arlene Jones, and Utah Home Fire Insurance Company, a Utah corporation, Defendants.**

**Ralph JONES and Arlene Jones, Third–Party Plaintiffs,**

v.

**INSURANCE BY KATHY, INC., a Utah corporation, Third–Party Defendant.**

Civil No. 2:95cv634.

United States District Court, D. Utah, Central Division.

Sept. 3, 1996.

---

Mark L. Anderson, Christensen & Jensen, Salt Lake City, UT, for Plaintiff.

Ray G. Martineau, Salt Lake City, UT, for Defendants/Third–Party Plaintiffs, Joneses.

Roger R. Fairbanks, Salt Lake City, UT, for Third–Party Defendant, Insurance By Kathy, Inc.

## MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF AMERICAN'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THIRD–PARTY DEFENDANT KATHY'S MOTION FOR SUMMARY JUDGMENT

WINDER, Chief Judge.

This matter is before the court on Plaintiff American Concept Insurance Company's ("American") and Insurance by Kathy, Inc.'s ("Kathy") motions for summary judgment. A hearing was held on June 25, 1996. At the hearing, American was represented by Mark L. Anderson, Defendants Ralph Jones and Arlene Jones (the "Joneses") were represented by Ray G. Martineau, and Kathy was represented by Roger R. Fairbanks. Prior to the hearing, the court had read the memo-

randa, affidavits, and other materials submitted by the parties. After taking the matter under advisement, the court has further considered the law and the facts relating to these motions. Now being fully advised and good cause appearing, the court enters the following Memorandum Decision and Order.

## I. BACKGROUND

The memoranda and affidavits submitted by the parties reveal the following undisputed facts.

During June of 1990, construction began on a home that the Joneses were building in Ivins, Utah and on June 20, 1990, the Joneses purchased a course-of-construction insurance policy from Utah Home Fire. On December 7, 1990, the Utah Home Fire course-of-construction insurance policy was converted into a homeowners policy. During January of 1991, construction of the home was substantially completed. After construction on the home was completed, the Joneses began noticing cracking and settling of the interior walls and concrete floor slabs.

Sometime after the Joneses' course-of-construction insurance policy was converted into a Utah Home Fire homeowners policy, the Joneses' insurance agent Kathryn Allen ("Allen"), an agent of Kathy, advised the Joneses that Utah Home Fire had decided not to renew any of its homeowners policies in Utah and that the Joneses would have to choose another insurer. Allen suggested that the Joneses purchase replacement coverage from American which she represented as providing coverage of the "same type, quality and approximate cost as the Utah Home Fire coverage." Accordingly, on December 15, 1993,[1] the Joneses transferred their homeowners policy to American.

By January of 1994, the damage to the Joneses' home was becoming severe enough that the Joneses hired Southwest Testing Laboratories, Alpha Engineering, Atlas Piers of Utah and, later, a professional engineer, Arnold W. Coon ("Mr. Coon"), to evaluate the cause of the damage. On June 1, 1994, Mr. Coon issued a report regarding his "in-

vestigation of settlement of the Ralph Jones Home." Mr. Coon described the damage as "cracking and settlements" and indicated that the damage was caused by "a connection at a fitting in a 3 inch plastic sewer line under the slab in the Bathroom [which] had not been cemented together properly." Because of this faulty fitting connection, "whenever there was water in the sewer line, some of it drained out into the soil under the slab." Quoting from a report issued by Southwest Testing, Mr. Coon indicated that the home settlement was caused by "sustained saturation" of the soil under the home "due to leakage from a 3 inch sewer drain line" which likely began shortly after construction of the home and continued "undetected for the [next] two years." Mr. Coon more specifically described how the water escaped from the pipe into the soil under the home:

> Usually, a leak in a pressurized supply line is detected quite soon after the leak occurs. Damage may be much more localized. In this case, however, the leak was in a drainage line which was not under pressure. Every time a toilet was flushed, a shower was taken, a bath tub was drained, dishes were washed, hands were washed, laundry was done, etc. water would flow in the drain line to the septic tank. Some of this drain water probably flowed out into the surrounding soil every time one of these activities took place. If the area of leakage had been exposed to the atmosphere, much of this water would have evaporated. In this case, the building and its floor slab help[ed] prevent evaporation from taking place. Thus, essentially all of the water which leaked out was trapped in the soil under the home.

Because of the damage to the Joneses' home, Mr. Coon recommended that the leaky fitting connection be repaired, the settled walls be stabilized, the surface of the floor slabs be ground down so as to achieve evenness on both sides of the cracks, the cracks in the floor slabs be sealed, and the cracks in the interior and exterior walls be repaired. By an affidavit signed March 11, 1996, Mr. Coon stated that in his opinion "as of June 1,

---

1. American contends that the transfer occurred on December 15, 1992. However, the disputed

fact is not relevant to the issues raised by the motions.

1994 the Jones Residence had suffered a very substantial impairment to its basic structural integrity which required that the recommendations [he made in his June 1, 1994 report] be implemented in order to restore the basic structural integrity of the Jones Residence and render it habitable and safe for occupancy as a residence."

On January 27, 1994, Ralph Jones telephoned Allen and advised her of the problems with the home. Allen responded by stating that the Joneses would "just have to pursue the plumber's liability insurance first before pursuing any claim against Utah Home Fire or American Concept."[2] The Joneses then began pursuing a lawsuit against the plumber who had installed the faulty fitting connection. During January, May, and September of 1994, Ralph Jones telephoned Allen several times to advise her concerning the progress of the Joneses' claim against the plumber. The lawsuit against the plumber was ultimately unsuccessful.

The Joneses eventually made claims on both their Utah Home Fire and American homeowners policies for the damage to their home. The Joneses settled their claim with Utah Home Fire. However, American denied their claim citing a number of exclusions in the homeowners policy. Subsequently, American filed the present declaratory action seeking a ruling from this court that the Joneses are not entitled to coverage under the American policy. In turn, the Joneses filed a counterclaim against American seeking payment under the policy and a third-party complaint against Kathy seeking damages for Allen's allegedly improper advice that the Joneses pursue recovery from the plumber before making claims on their poli-

cies with Utah Home Fire and American.[3] In response, American filed a motion for summary judgment seeking a declaration from this court that the damage to the Joneses' home is not covered by the American policy and a dismissal of the Joneses' counterclaim against American. Kathy filed a motion for summary judgment seeking dismissal of the Joneses' third-party complaint. The court now addresses the issues raised by these two motions.

## II. STANDARD OF REVIEW

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir.1991).

■ Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Gonzales v. Millers Casualty Ins. Co.,* 923 F.2d 1417,

2. Kathy disputes that Allen made this statement to Ralph Jones. However, in order to succeed on its motion for summary judgment Kathy must demonstrate that this factual dispute is not material or that even assuming the facts asserted by the Joneses that Kathy is entitled to judgment as a matter of law.

3. Originally, the Joneses sought recovery from Kathy based on two additional theories: (1) Allen's advice to pursue the plumber first caused the Joneses to delay filing a claim with American, thereby making their eventual claim with American untimely; and (2) Allen's representation that American's homeowners policy provid-

ed coverage of the same type, quality, and cost as the Utah Home Fire policy was false and caused the Joneses to accept the "inadequate" American policy rather than a policy with broader coverage. However, as indicated in the briefs and at oral argument the Joneses have, rightly so, abandoned these two theories. The Joneses only remaining theory of liability against Kathy is that Kathy's "improper" instruction to the Joneses that they should pursue any claim against the plumber before making claims against their American and Utah Home Fire insurance policies caused the Joneses to incur duplicate litigation costs.

1419 (10th Cir.1991).[4] The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

■ In considering whether there exist genuine issues of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir.), *cert. denied*, 502 U.S. 827, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991).[5] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D.Utah R. 202(b)(4).

### III. DISCUSSION

#### A. American's Motion for Summary Judgment

The Joneses claim that the damage to their home is covered by two provisions of the American policy, Coverage A and Additional Coverage, described as follows:

**SECTION I—PROPERTY COVERAGES**

**COVERAGE A—Dwelling**

We cover:

1. the dwelling on the residence premises shown in the Declarations, including structures attached to the dwelling;

\* \* \* \* \* \*

**ADDITIONAL COVERAGES**

\* \* \* \* \* \*

8. Collapse. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. \* \* \* [Accidental discharge or overflow of water ... from within a plumbing .. system....]

Collapse does not include settling, cracking, shrinking, bulging or expansion.

American, in response, contends that: (1) Coverage A is subject to two exclusions that apply in this case; (2) Additional Coverage does not provide coverage because there was no collapse in this case as a matter of law; and (3) even if Additional Coverage did provide coverage, it is subject to two exclusions that apply in this case.

■ In analyzing the parties' competing arguments regarding the proper interpretation of the policy terms, the court is aided by some fundamental rules governing insurance policies. Utah law provides that because insurance polices are contracts of adhesion, "insurance policies should be construed liberally in favor of the insured .. so as to promote and not defeat the purposes of insurance." *United States Fidelity & Guar. v. Sandt*, 854 P.2d 519, 521–22 (Utah 1993) (quoting *Richards v. Standard Acc. Ins. Co.*, 58 Utah 622, 200 P. 1017, 1020 (1921)). Accordingly, if a policy contains ambiguous language that is "fairly susceptible to different interpretations," the policy must be construed in favor of coverage. *Id.*, 854 P.2d at 522. In determining whether policy language is fairly susceptible to different interpretations, the language must be construed from the point of view of an "ordinary purchaser of insurance." *Id.*, 854 P.2d at 523. Finally, any language that purports to limit or exclude coverage should be strictly construed against the insurer. *Id.*

#### 1. COVERAGE A—DWELLING

■ American concedes that by its plain language Coverage A provides coverage for the Joneses' home. However, American maintains that Coverage A is subject to two exclusions—damage caused by repeated leakage of water from a plumbing system and damage caused by settling and cracking—

---

4. The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp*, 477 U.S. at 324, 106 S.Ct. at 2553.

5. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

which apply in this case. First, American argues that the damage is excluded because it was caused by the repeated leakage of water from a plumbing system. American relies on the following policy language:

### SECTION I—PERILS INSURED AGAINST

#### COVERAGE A—DWELLING and

#### COVERAGE B—OTHER STRUCTURES

We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however we do not insure loss:

\* \* \* \* \* \*

2. caused by:

\* \* \* \* \* \*

> e. constant or repeated seepage or leakage of water ... over a period of weeks, months or years from within a plumbing ... system.

This policy language is clear and the undisputed facts reveal that the damage to the Joneses' home was "caused by constant or repeated seepage or leakage of water ... over a period of weeks, months or years from within a plumbing ... system."

Mr. Coon, the Joneses' expert, indicates that the damage was caused by "sustained saturation" of the soil under the home "due to leakage from a 3 inch sewer drain line" which likely began shortly after construction of the home and continued "undetected for the [next] two years." Accordingly, this exclusion applies and Coverage A does not provide coverage for the damage to the

Joneses' home. *See, e.g., Mutual Redevelopment Houses v. Greater New York Mut. Ins. Co.,* 204 A.D.2d 145, 611 N.Y.S.2d 550, 552 (1994) (holding subsidence damage resulting from water leak over number of years from broken pipe joint is "expressly excluded" by repeated leakage exclusion); *Finn v. Continental Ins. Co.,* 218 Cal.App.3d 69, 267 Cal. Rptr. 22, 23–24 (1990) (holding settling foundation caused by water leaking from broken sewer pipe for six months to several years "plainly and unambiguously" excluded by repeated leakage exclusion); *Howard v. Commercial Union Ins. Co.,* 441 So.2d 466, 468 (La.App.1983) (holding structural damage resulting from shifting of soil underlying foundation caused by water pipe which leaked beneath foundation for several months was excluded by repeated leakage exclusion).

Because the court holds that Coverage A is excluded by the repeated leakage exclusionary clause, the court does not reach the issue of whether Coverage A is excluded because the damage was caused by cracking and settling.[6]

### 2. *ADDITIONAL COVERAGES—COLLAPSE*

■ American asserts that Additional Coverage for collapse does not provide coverage for the damage to the Joneses' home because the Joneses' home did not collapse as a matter of law. Although American apparently concedes that the damage to the Joneses' home was caused by the "[a]ccidental discharge or overflow of water ... from within a plumbing .. system,"—an event triggering application of collapse coverage—

---

**6.** American contends that Coverage A is excluded by the following language:
SECTION I—PERILS INSURED AGAINST
COVERAGE A—DWELLING and
COVERAGE B—OTHER STRUCTURES
We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however we do not insure loss:
\* \* \* \* \* \*

2. caused by:
\* \* \* \* \* \*
f.
\* \* \* \* \* \*
(6) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls floors, roof or ceilings.

American emphasizes the policy language that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." Because Mr. Coon, the Joneses' expert, repeatedly refers to the damage to the Joneses' home as constituting settling and cracking, American argues that the undisputed facts show that there was no collapse as defined by the policy.

American maintains that the collapse coverage only applies if the insured building is reduced to a flattened form or rubble. American further contends that, at the very least, the collapse coverage only applies if the insured building is in "imminent danger" of being reduced to a flattened form or rubble.

There is no Utah case law discussing this type of collapse coverage. However, there is a split of authority among other jurisdictions regarding whether such policy provisions are ambiguous and the extent of coverage they provide. It appears that the clear modern trend is to hold that collapse coverage provisions similar to American's—that is provisions which define collapse as not including cracking and settling—provide coverage if there is substantial impairment of the structural integrity of the building or any part of a building. *See, e.g., Island Breakers v. Highlands Underwriters Ins. Co.*, 665 So.2d 1084, 1085–85 (Fla.Dist.Ct.App.1995) (holding collapse coverage applies if there is a "substantial impairment of the structural integrity" of part of the building); *Thomasson v. Grain Dealers Mut. Ins. Co.*, 103 N.C.App. 475, 405 S.E.2d 808, 809 (1991) (holding the word collapse is ambiguous because to "require that the house fall in completely" would render the coverage illusory); *Royal Indem. Co. v. Grunberg*, 155 A.D.2d 187, 553 N.Y.S.2d 527, 528–29 (1990) (agreeing with "numerical majority of American jurisdictions [that] a substantial impairment of the structural integrity of a building is said to be a collapse" because to require the building to fall down would be "unreasonable" in light of an insured's duty to protect property from further damage); *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 532 A.2d 1297, 1299–1300 (1987) (noting dictionary definition of collapse as "a breakdown in vital energy, strength, or stamina" and "sudden loss of accustomed abilities," court held that collapse coverage did not include settling or cracking unless substantial impairment of structural integrity of building ensued); *Ercolani v. Excelsior Ins. Co*, 830 F.2d 31, 34 (3rd Cir. 1987) (predicting that New Jersey would follow other states in holding that collapse requires only "serious impairment of structural integrity"); *Nationwide Mut. Fire Ins. Co. v. Tomlin*, 181 Ga.App. 413, 352 S.E.2d 612, 615 (1986) (holding that collapse includes any "reasonably detectable serious impairment of structural integrity" because such a definition "more realistically reflects the purposes of the policy"); *Sherman v. Safeco Ins. Co.*, 716 P.2d 475, 476 (Colo.Ct.App.1986) (holding that cracked masonry work, sagging roof, falling bricks, and bowed walls constituted collapse as a matter of law); *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 483, 709 P.2d 649, 652 (1985) (holding that settling that impairs the structural integrity of the building constitutes collapse); *Government Employees Ins. Co. v. DeJames*, 256 Md. 717, 261 A.2d 747, 751–52 (1970) (holding collapse is ambiguous because verb has restrictive meaning and noun has more liberal meaning including "breakdown in strength" and, thus, resolving ambiguity in favor of insured to include any serious impairment of structural integrity).

The court concludes that Utah would likely follow the modern trend for a number of reasons: (1) although American argues that collapse should be defined as being reduced to a flattened form or rubble, American did not include this definition in its policy even though it certainly could have done so; (2) although American's policy states that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion," it is virtually impossible to imagine a collapse (even defined as being reduced to a flattened form or rubble) that would not involve some of these attributes; thus, American's use of the term "collapse" is "fairly susceptible" to being interpreted as not including *mere* settling or cracking, but including settling or cracking that results in substantial impairment of a home's structural integrity; (3) some of the dictionary definitions of collapse, discussed by the cases listed above, include definitions such as "a breakdown in vital energy,

strength, or stamina" and "sudden loss of accustomed abilities," which suggest that the term "collapse" is "fairly susceptible" to an interpretation that it means a substantial impairment of structural integrity; (4) as indicated by several of the cases listed above, to require a building to fall down before allowing coverage would be unreasonable in light of an insured's duty to mitigate damages [7] and would be economically unsound; and (5) to require a home to be reduced to flattened form or rubble before allowing coverage would render American's coverage for "[a]ccidental discharge or overflow of water ... from within a plumbing ... system" illusory because it is difficult to imagine any circumstances in which the overflow of water from a plumbing system would reduce a home to rubble.

■■■ The court concludes that Utah courts would find American's collapse coverage provision ambiguous at best and, thus, construe the policy in favor of the Joneses. Accordingly, the Joneses need only show that there is an issue of material fact regarding whether their home "or any part of" their home sustained substantial impairment to its structural integrity. The Joneses have met that burden. Mr. Coon described the serious damage to the home and stated that "the Jones Residence had suffered a very substantial impairment to its basic structural integrity which required that the recommendations be implemented in order to restore the basic structural integrity ... and render it habitable and safe for occupancy as a residence."

■■■ The remaining issue is whether there are any applicable exclusions to the Additional Coverage for collapse. American argues that two exclusions apply—water damage and faulty workmanship. First, American contends that even if the Joneses' home collapsed, the resulting damage is excluded by the following policy language:

7. American's policy requires that "[i]n case of a loss to covered property, you [the insured] must ... protect the property from further damage [and] make reasonable and necessary repairs to protect the property." The Joneses certainly fulfilled this duty by hiring experts to evaluate the cause and severity of the damage to their home

## SECTION I—EXCLUSIONS

1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

   \*     \*     \*     \*     \*     \*

  c. Water Damage, meaning

   \*     \*     \*     \*     \*     \*

    (3) water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Based on this policy language, American contends that the damage to the Joneses' home is excluded because it was caused by "water below the surface of the ground, including water which exert[ed] pressure on or seep[ed] or leak[ed] through" the Joneses' foundation. The court disagrees. Mr. Coon's report, which is uncontradicted, indicates that the damage was caused by water which leaked from a pipe under the home and saturated the soil, causing the soil to shift and the home to settle and crack. There is no evidence that any water seeped or leaked through the foundation or that any water exerted pressure on the foundation. Thus, the facts of the present case must be contrasted with the facts of those cases cited by American. *See Buttelworth v. Westfield Ins. Co.,* 41 Ohio App.3d 288, 535 N.E.2d 320, 321 (1987) (stating "[i]t is undisputed that the damage to plaintiff's home was the result of water below the surface of the ground which seeped through the foundation"); *Ovbey v. Continental Ins. Co.,* 613 F.Supp. 726, 727 (N.D.Ga.1985), *judgment aff'd,* 782 F.2d 178 (11th Cir.1986) (stating plaintiffs "do not dispute that the expert testimony in this case demonstrates that the reason the wall failed was hydrostatic pressure on the foundation").

and by implementing the repairs recommended by Mr. Coon to stop the water leakage and prevent further damage. However, because the repairs prevented further damage to the home, and perhaps even prevented the home from eventually being reduced to a flattened form or rubble, the Joneses are now being denied coverage.

█ Furthermore, the court notes that the coverage for "collapse of a building or any part of building caused only by [a]ccidental discharge or overflow of water ... from within a plumbing ... system" would be rendered illusory if American could rely on the exclusion for "water below the surface of the ground." The court agrees with those cases which have determined that specific coverage for accidental discharge of water cannot be rendered meaningless by a subsequent, generic exclusion for damage caused by water below the surface. *See, e.g., Kozlowski v. Penn Mut. Ins. Co.*, 295 Pa.Super. 141, 441 A.2d 388 (1982); *Hartford Accident & Indem. Co. v. Phelps*, 294 So.2d 362 (Fla. Dist.Ct.App.1974).

█ Next, American asserts that even if the Joneses' home collapsed and even if the exclusion for water below the surface does not apply, the damage to the Joneses' home is excluded by the following policy language:

We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

\* \* \* \* \* \*

c. Faulty, inadequate or defective:

\* \* \* \* \* \*

(2) design, specifications, workmanship, repair, construction. . . .

American argues that because the damage to the Joneses' home was caused by the "[f]aulty, inadequate or defective ... workmanship" of the plumber who did not properly cement together the connection in the sewer line, the damage is excluded by the above language. The court agrees that it is undisputed that the plumber's faulty workmanship caused the damage to the Joneses' home.[8] However, the plain language of this exclusionary clause states that "any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy

is covered." In other words, the damage to the pipe itself is excluded from coverage, but the ensuing loss to Joneses' home is covered unless it is otherwise excluded or excepted in the policy. *See, e.g., McDonald v. State Farm Fire & Casualty Co.*, 119 Wash.2d 724, 837 P.2d 1000, 1005 (1992) (reviewing similar faulty workmanship exclusion and holding "[r]easonably interpreted, the ensuing loss clause says if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain uncovered"); *Murray v. State Farm Fire & Casualty Co.*, 219 Cal.App.3d 58, 268 Cal. Rptr. 33, 36 (1990) (stating that "clause of the policy provides the homeowner with coverage for losses which flow from an excluded loss, as long as the 'ensuing' loss is not also specifically excluded"). Besides the exclusions already discussed, American has not pointed to any other language excluding or excepting the ensuing loss to the Joneses' home and, thus, if the Joneses can prove that their home collapsed then the loss is covered.

In sum, the court concludes that the only coverage which may apply to the damage to the Joneses' home is that provided by Additional Coverage for collapse. There is an issue of fact regarding whether or not the Joneses' home or any part thereof sustained a substantial impairment to its structural integrity and, thereby, "collapsed" pursuant to the terms of the policy. This issue of fact must be resolved by a jury.

### B. Kathy's Motion for Summary Judgment

█ The Joneses claim that Allen, the principal agent of Kathy, advised them that they would "just have to pursue the plumber's liability insurance first before pursuing any claim against ... American." As a result of this allegedly improper advice the Joneses claim that they first pursued an action against the plumber and that American avoided "being joined together with the plumber as a party defendant in a single action filed by the Jones." Joneses' Memorandum in Opposition to Kathy's Motion for

---

8. As indicated in the background section, the Joneses sued the plumber but were ultimately unsuccessful. The fact that the Joneses were unsuccessful against the plumber suggests that perhaps the plumber was not negligent. However, neither party has indicated why the lawsuit against the plumber was unsuccessful. And, in any event, the Joneses have not argued that the plumber was not negligent and appear to concede that he was negligent.

Summary Judgment, p. 10. As a result, the Joneses claim that they were damaged in "the filing and prosecution of two separate actions involving a substantial unnecessary duplication of effort, costs and attorney's fees, as well as a potentially different result." *Id.*, pp. 10–11. Other than this general statement, the Joneses do not delineate any specific costs which have been unnecessarily duplicated.

 Kathy argues that even assuming that Allen made the statement to the Joneses and that as a result the Joneses did not attempt to join American and the plumber in a single lawsuit, that the Joneses cannot prove proximate cause or damages. The court agrees. First, under Utah law the Joneses could not have joined American as a defendant in their state court action against the plumber. *See, e.g., Christensen v. Peterson*, 25 Utah 2d 411, 483 P.2d 447, 448 (1971) (holding that plaintiff's vehicle insurer could not properly be joined as party defendant with tortfeasor); *Young v. Barney*, 20 Utah 2d 108, 433 P.2d 846, 848 (1967) (holding that tortfeasor's vehicle insurer could not properly be joined in suit against tortfeasor).[9] Furthermore, because the issues involved in the dispute against American regarding policy coverage and the issues involved in the dispute against the plumber regarding negligence in cementing a fitting connection are entirely different, a duplication of effort, costs, and attorneys fees would have resulted even in a single lawsuit. The Joneses have not outlined any specific costs that would have been saved by bringing a single lawsuit. Accordingly, the Joneses' third-party complaint against Kathy must be dismissed.

### IV. ORDER

IT IS HEREBY ORDERED as follows:

1. Plaintiff American's Motion for Summary Judgment is denied.

2. Third–Party Defendant Kathy's Motion for Summary Judgment is granted and the Joneses' Third–Party Complaint against Kathy is dismissed with prejudice.

3. This order shall serve as the order of the court and no further order need be prepared by counsel.

---

9. The Joneses argument that the joinder of American and the plumber as defendants in a single lawsuit may have lead to a "potentially different result" is precisely the reason that Utah courts have consistently held that when possible "information concerning insurance should not be disclosed to the jury" in a negligence case. *Young*, 433 P.2d at 848.