**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| QUEEN ANNE PARK HOMEOWNERS ASSOCIATION, a Washington non-profit corporation, *Plaintiff-Appellant*, | No. 12-36021 |
| | D.C. No. 2:11-cv-01579-TSZ Western District of Washington, Seattle |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurance company, *Defendant-Appellee*. | ORDER CERTIFYING A QUESTION TO THE WASHINGTON SUPREME COURT |

Filed August 19, 2014

Before: Arthur L. Alarcón, A. Wallace Tashima, and Mary H. Murguia, Circuit Judges.

Order

**SUMMARY**[*]

**Certification to Washington Supreme Court**

The panel certified the following question to the Washington Supreme Court:

> What does "collapse" mean under Washington law in an insurance policy that insures "accidental direct physical loss involving collapse," subject to the policy's terms, conditions, exclusions, and other provisions, but does not define "collapse," except to state that "collapse does not include settling, crackling, shrinking, bulging or expansion?"

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

This is an insurance coverage case filed in federal court pursuant to our diversity jurisdiction. The policy at issue provides coverage in certain circumstances for the "collapse" of a building, but it does not define "collapse." The most recent relevant Washington Supreme Court case, *Sprague v. Safeco Insurance Co. of America*, 276 P.3d 1270 (Wash. 2012), suggests that what constitutes "collapse" when the term is otherwise undefined in the insurance policy at issue is an open question under Washington law. The parties filed cross motions to certify that question to the Washington Supreme Court to resolve the issue. We granted the motions. We respectfully request that the Washington Supreme Court accept and decide the certified question below.

**I**

The Queen Anne Park is a two-building condominium in Seattle, Washington. State Farm Fire and Casualty Co. ("State Farm") insured the property under a "Condominium/Association Policy" (the "Policy"). The Policy was in effect from October 18, 1992 to October 18, 1998. In general, the Policy covered "accidental direct physical loss" to covered property, unless the loss was excluded or limited. An "extension of coverage" covered "any accidental direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: . . . (2) hidden decay . . . ." The coverage extension further provided, "Collapse does not include settling, cracking, shrinking, bulging or expansion." The Policy did not otherwise define the term "collapse."

On August 20, 2010, the Queen Anne Park Homeowners Association (the "HOA") filed a claim with State Farm. The HOA claimed that the Policy covered the "collapse"of a building, which the HOA interpreted to mean "a substantial impairment of the structural integrity of any portion or component of the building." The HOA claimed that an inspection of the Queen Anne Park had "revealed several areas of hidden decay" and that the HOA "believe[d] that these and other areas suffered a substantial impairment of structural integrity during [State Farm's] policy periods."

On August 23, 2011, after conducting its own inspections, State Farm denied the claim. State Farm concluded that "[a] loss involving collapse" had "not commence[d] in any policy term" and that various exclusions to coverage applied.

In September 2011, in the federal District Court for the Western District of Washington, the HOA filed suit against State Farm, seeking declaratory relief and damages for breach of contract. The HOA moved for summary judgment, arguing that, under Washington law, the term "collapse," when otherwise undefined in the insurance policy at issue, means "substantial impairment of structural integrity." The district court denied the motion. It explained its rationale as follows:

> Given the reasoning of the majority and concurrence in *Sprague*, and the decision in *Ocean Winds* [*Council of Co-Owners, Inc. v. Auto-Owner Insurance Co.*, 565 S.E.2d 306 (S.C. 2002)], the Court concludes that, even if Washington were to adopt a relaxed standard [of collapse] that is somewhere short of "rubble on the ground," it would require an insured seeking coverage under a collapse

provision to show, in addition to a substantial impairment of structural integrity, an imminent threat of collapse.

The court concluded that the HOA could not meet this standard.

## II

As noted earlier, the most recent relevant Washington Supreme Court case concerning what constitutes "collapse" under Washington law is *Sprague*. The issue in *Sprague* was whether a Safeco homeowners policy covered losses to a residential deck system stemming from construction and rot issues. The policy "provided coverage for all losses that were not excluded," and "did not define the term 'collapse' nor explicitly address 'collapse' as a covered or excluded loss." *Sprague*, 276 P.3d at 1271.

The Washington Supreme Court concluded that the policy excluded the losses. *Id*. at 1273. The five-justice majority expressly declined to address what constitutes "collapse" under Washington law. *Id.* at 1272 ("We need not decide whether the deck had collapsed due to the loss of structural integrity even though it had not fallen to the ground."). Two justices filed a concurrence, stating "it is apparent that [the] deck did not collapse" because the "record here shows that the Spragues' deck did not break down. Neither did it fall apart or crumble." *Id.* at 1276. The concurring justices defined "collapse" as "'to break down completely: fall apart in confused disorganization: crumble into insignificance or nothingness . . . fall into a jumbled or flattened mass.'" *Id.* (quoting Webster's Third New International Dictionary 443 (2002)). The four dissenting justices asserted that the court

should have addressed what constitutes "collapse." *Id.* at 1273–76. They argued, "Absent a policy definition, courts have generally rejected the fall-down notion of collapse in favor of the more liberal standard, 'substantial impairment of structural integrity.'" *Id.* at 1274 (second internal quotation marks omitted) (discussing cases).

### III

Washington's Federal Court Local Law Certificate Procedure Act, Wash. Rev. Code §§ 2.60.010–900, authorizes the Washington Supreme Court to accept certified questions from federal courts. Wash. Rev. Code § 2.60.020. "Use of certification rests in the sound discretion of this court." *Churchill v. F/V Fjord (In re McLinn)*, 744 F.2d 677, 681 (9th Cir. 1984) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)); *see also Bylsma v. Burger King Corp.*, 676 F.3d 779, 781 n.1 (9th Cir. 2012) ("[W]e may properly certify a question *sua sponte*." (citing Wash. Rev. Code § 2.60.030(1); *Keystone Land & Dev. Co. v. Xerox Corp.*, 353 F.3d 1093, 1095 n.2 (9th Cir. 2003))).

Certification is appropriate here because the dispositive issue is the meaning of the term "collapse" in the insurance policy at issue. There is no clear and controlling Washington precedent on point, and a resolution of the issue by the Washington Supreme Court would be determinative of the outcome in this case. Additionally, the answer to the question may have far-reaching effects on individuals and entities insured under residential and commercial property insurance policies subject to Washington law.

**ORDER**

In light of our foregoing discussion, we respectfully certify the following question to the Washington Supreme Court:

> What does "collapse" mean under Washington law in an insurance policy that insures "accidental direct physical loss involving collapse," subject to the policy's terms, conditions, exclusions, and other provisions, but does not define "collapse," except to state that "collapse does not include settling, cracking, shrinking, bulging or expansion?"

We do not intend to restrict the Washington Supreme Court's consideration of this issue, and we recognize that it may reformulate the question.

The Clerk of Court is hereby ordered to transmit to the Washington Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all briefs and excerpts of record in this matter, pursuant to Revised Code of Washington §§ 2.60.010(4) and 2.60.030(2) and Washington Rule of Appellate Procedure 16.16(d).

Further proceedings in this court are stayed pending the Washington Supreme Court's decision whether it will accept certification and, if so, this court's receipt of the answer to the certified question. The parties shall file a joint status report in this court no more than seven days after the Washington Supreme Court accepts or rejects certification. If the

Washington Supreme Court accepts the certified question, we designate Plaintiff-Appellant HOA to file the first brief, pursuant to Washington Rule of Appellate Procedure 16.16(e)(1), and the parties shall file a joint status report in this court to inform the court when the Washington Supreme Court files its answer. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the Washington Supreme Court's decision to decline to answer the certified question.

It is so **ORDERED**.

_____

Chief Judge Alex Kozinski
U.S. Court of Appeals for the Ninth Circuit