

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE ___JUN 1 8 2015___

_____
for CHIEF JUSTICE

This opinion was filed for record
at 8:00AM on June 18, 2015

_____ Deputy
for Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT | ) ) ) ) | No. 90651-3 |
| IN | ) ) | |
| QUEEN ANNE PARK HOMEOWNERS ASSOCIATION, a Washington non-profit corporation, | ) ) ) ) | |
| | ) | En Banc |
| Appellant, | ) ) | |
| v. | ) ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurance company, | ) ) ) | |
| Appellee. | ) ) ) | Filed ___JUN 1 8 2015___ |

GONZÁLEZ, J.—The Ninth Circuit has asked this court to answer:

> What does "collapse" mean under Washington law in an insurance policy that insures "accidental direct physical loss involving collapse," subject to the policy's terms, conditions, exclusions, and other provisions, but does not define "collapse," except to state that "collapse does not include settling, cracking, shrinking, bulging or expansion?"

*Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 763 F.3d 1232,

1235 (9th Cir. 2014). Rather than adopt a fixed definition of "collapse" for all

insurance contracts, we apply Washington law to interpret the ambiguous term "collapse" in the insurance contract before the Ninth Circuit. We conclude that in the insurance contract, "collapse" means "substantial impairment of structural integrity." "Substantial impairment of structural integrity" means substantial impairment of the structural integrity of a building or part of a building that renders such building or part of a building unfit for its function or unsafe and, under the clear language of the insurance policy here, must be more than mere settling, cracking, shrinkage, bulging, or expansion.

## FACTS

Queen Anne Park (QAP) is a two-building condominium in Seattle that was insured under a State Farm Fire and Casualty Company policy (Policy). The Policy was in effect from October 18, 1992 to October 18, 1998.

The Policy covered "accidental direct physical loss" to insured property, unless the loss was excluded or limited. Appellant's Excerpts of Records (ER) at 136, 138-40. An "[e]xtension of [c]overage" covered "any accidental direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following: . . . (2) hidden decay." *Id.* at 141-42. The coverage extension also provided that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." *Id.* at 142. Neither the Policy nor its extensions otherwise defined the term "collapse."

The QAP Homeowners Association (HOA) filed a claim with State Farm in 2010, claiming that QAP had collapsed, which the HOA interpreted to mean "a substantial impairment of the structural integrity of any portion or component of the building." Appellee's Suppl. Excerpts of Records (SER) at 5. The HOA claimed that QAP had "several areas of hidden decay" and that the HOA "believe[d] that these and other areas suffered a substantial impairment of structural integrity during [the] policy periods." *Id.* The HOA's claim was based on an HOA engineer finding hidden decay in some shear walls (plywood/gypsum sheathings), which he opined had substantially impaired the walls' ability to resist lateral loads. ER at 119-22. After conducting its own inspections, in 2011, State Farm denied the HOA's claim and concluded that "[a] loss involving collapse" had "not commence[d] in any policy term" and that various exclusions to coverage applied. *Id.* at 218 (emphasis omitted).

The HOA filed suit in the Western District of Washington, seeking declaratory relief and damages for breach of contract. The Western District of Washington granted summary judgment in favor of State Farm. The HOA appealed to the Ninth Circuit. The Ninth Circuit certified a question of state law to this court. *Queen Anne Park Homeowners Ass'n*, 763 F.3d at 1235.

## ANALYSIS

RCW 2.60.020 authorizes this court to accept certified questions from federal courts. "Certified questions from federal court are questions of law that we review de novo." *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 799, 231 P.3d 166

(2010) (citing *In re F5 Networks, Inc.*, 166 Wn.2d 229, 236, 207 P.3d 433 (2009)). "We do not consider the legal issues in the abstract but instead consider them based on the certified record that the federal court provides." *Id.* (citing RCW 2.60.030(2); *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 126, 196 P.3d 664 (2008)). "Construction of an insurance policy is a question of law for the courts, the policy is construed as a whole, and the policy 'should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 65, 882 P.2d 703 (1994) (internal quotation marks omitted) (quoting *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989)).

"'[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 181, 110 P.3d 733 (2005) (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100 (1999)). We find that the term "collapse" in the Policy is ambiguous because it is susceptible to more than one reasonable interpretation.

Illustrative of this is our opinion in *Sprague v. Safeco Insurance Co. of America*, 174 Wn.2d 524, 276 P.3d 1270 (2012), where we were asked to define the term "collapse" in Washington insurance policies. While the court decided the case on different grounds, both the dissent and the concurrence proposed different definitions of "collapse." *Id.* This alone demonstrates that "collapse" is an

ambiguous term. The division of our court is reflected in courts across the country that have adopted different but reasonable definitions of "collapse" in insurance policies. *See, e.g., Olmstead v. Lumbermens Mut. Ins. Co.*, 22 Ohio St. 2d 212, 259 N.E.2d 123, 126 (1970) (defining "collapse" as "a falling down, falling together, or caving into an unorganized mass"); *Am. Concept Ins. Co. v. Jones*, 935 F. Supp. 1220, 1227 (D. Utah 1996) (defining "collapse" as substantial impairment of structural integrity); *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 290 (3d Cir. 2004) (defining "collapse" as substantial impairment of structural integrity that "'connotes *imminent* collapse threatening the preservation of the building as a structure or . . . health and safety'" (quoting *Fantis Foods, Inc. v. N. River Ins. Co.*, 332 N.J. Super. 250, 260 (N.J. Super. Ct. App. Div. 2000))). An undefined term "collapse" in an insurance policy is an ambiguous term because it is susceptible to more than one reasonable interpretation, demonstrated by the range of reasonable definitions of "collapse" adopted by various courts.[1]

---

[1] According to the dissent, "'[c]ollapse' is not a vague term and is not ambiguous." Dissent at 2. The term "collapse" is ambiguous because it is "'subject to more than one reasonable interpretation when applied to a particular set of facts.'" *Quadrant Corp.*, 154 Wn.2d at 181 (quoting *Madison Constr. Co.*, 557 Pa. at 606). For example, while State Farm argues that the term "collapse" is "clear and unambiguous" and "the average purchaser would not think that the State Farm policy is ambiguous," State Farm itself does not offer an exact definition of "collapse," which supports the conclusion that the term is ambiguous. Br. of Appellee at 16, 36. State Farm argues that "the average purchaser of insurance would define 'collapse' to include something less than total destruction: a structure's significant falling or caving, albeit not to the ground, or perhaps imminent falling or caving or similar damage," *id.* at 6-7, but also offers a definition without imminency, *id.* at 18 ("[T]he average purchaser of insurance would understand—not only rubble-on-the ground, but also a significant falling or caving in that does not reach the ground."). Also, as the dissent recognizes, circuits and courts do not agree on a single definition of "collapse," instead defining "'collapse' in three major ways—actual collapse,

Undefined terms in an insurance policy "are to be interpreted in accord with the understanding of the average purchaser of insurance, and the terms are to be given their plain, ordinary and popular meaning." *Queen City Farms, Inc.*, 126 Wn.2d at 77. Importantly,

> It is Hornbook law that where a clause in an insurance policy is ambiguous, the meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning. *Jeffries v. General Casualty Co. of America*, 46 Wn.2d 543, 283 P.2d 128 (1955); *Kane v. Order of United Commercial Travelers of America*, 3 Wn.2d 355, 100 P.2d 1036 (1940). Ambiguous exclusionary clauses, particularly, should be construed in the manner most favorable to the insured. *Brown v. Underwriters at Lloyd's*, 53 Wn.2d 142, 332 P.2d 228 (1958); *Murray v. Western Pacific Ins. Co.*, 2 Wn. App. 985, 472 P.2d 611 (1970).

*Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 358, 517 P.2d 966 (1974). The definition of "collapse" requested by the insured—substantial impairment of structural integrity—is a reasonable definition because it comports with the commonsense meaning of "collapse," which is evident from it having been adopted as the definition of "collapse" by many courts across the country and used by State Farm in at least one other case. *Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co.*, 104 Wn. App. 597, 600, 17 P.3d 626 (2000) (State Farm agreed with the insured that the word

---

imminent collapse, and substantial impairment of structural integrity." Dissent at 3 (footnote omitted). Furthermore, not only does the dissent disagree with this opinion, the dissent and concurrence in *Sprague* provided two different reasonable interpretations of "collapse" both supported by definitions of "collapse" in *Webster's Third New International Dictionary*. *Sprague*, 174 Wn.2d at 532-38. Finally, we note that the Ninth Circuit asked us to define "collapse." *Queen Anne Park Homeowners Ass'n*, 763 F.3d at 1235. If "collapse" was unambiguous, the Ninth Circuit would not have needed to certify that question to us. The dissent fails to show that the term "collapse" is not ambiguous.

"collapse" in the policy in that case meant "'substantial impairment of structural integrity.'"); *see, e.g., Jones*, 935 F. Supp. at 1227-28; *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 252-53, 532 A.2d 1297 (1987).

Here the insured requests that "collapse" be interpreted to mean "substantial impairment of structural integrity." We largely agree. Of the definitions offered to us, substantial impairment of structural integrity is both reasonable and the most favorable to the insured. Based on the language of the Policy, however, we caution that "collapse" must mean something more than mere "settling, cracking, shrinking, bulging or expansion." ER at 142. Also, we note that "structural integrity" of a building means a building's ability to remain upright and "substantial impairment" means a severe impairment. Taken together, "substantial impairment" of "structural integrity" means an impairment so severe as to materially impair a building's ability to remain upright.[2] Considering the Policy as a whole, we conclude that "substantial impairment of structural integrity" means the substantial impairment of the structural integrity of all or part of a building that renders all or part of the building unfit for its function or unsafe and, in this case, means more than mere settling, cracking, shrinkage, bulging, or expansion.

---

[2] We disagree that "substantial impairment of structural integrity" may be interpreted so loosely as to convert an insurance policy "into a maintenance agreement by allowing recovery for damage which, while substantial, does not threaten collapse." *Ocean Winds Council of Co-Owners, Inc. v. Auto-Owner Ins. Co.*, 350 S.C. 268, 271, 565 S.E.2d 306 (2002).

CONCLUSION

"Collapse" in the Policy means the substantial impairment of structural integrity of a building or part of a building that renders such building or part of a building unfit for its function or unsafe in a manner that is more than mere settling, cracking, shrinkage, bulging, or expansion.

González, J.

WE CONCUR:

No. 90651-3

FAIRHURST, J. (dissenting)—This case presents the question of "[w]hat does 'collapse' mean under Washington law in an insurance policy that insures 'accidental direct physical loss involving collapse,' . . . but does not define 'collapse.'" *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 763 F.3d 1232, 1235 (9th Cir. 2014). By defining "collapse" as "'substantial impairment of structural integrity,'" the majority expands the meaning of "collapse" from its commonsense and traditional definition. Majority at 1-2. Because "substantial impairment of structural integrity" is too far removed from the ordinary meaning of "collapse," I respectfully dissent.

This court has not yet defined "collapse" for insurance policies that lack a contractual definition. In *Sprague v. Safeco Insurance Co. of America*, 174 Wn.2d 524, 276 P.3d 1270 (2012), the majority of this court declined to define "collapse" but Justice Stephens' dissent and Justice Alexander's concurrence each proposed competing definitions. The majority here agrees with Justice Stephens' dissent in *Sprague* by holding that "substantial impairment of structural integrity" is a reasonable definition of "collapse." Majority at 5-6; *see Sprague*, 174 Wn.2d at 534

1

(Stephens, J., dissenting). In doing so, the majority expands the meaning of "collapse" beyond its ordinary definition. I agree with Justice Alexander's concurrence in *Sprague*, and would hold that collapse occurs when a building falls, crumbles, or caves in. 174 Wn.2d at 532 (Alexander, J. Pro Tem., concurring).

"Collapse" is not a vague term and is not ambiguous. We interpret an insurance policy as an average purchaser would read it and avoid technical interpretations. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 881, 784 P.2d 507 (1990). To determine the plain, ordinary, and popular meaning of "collapse" we look to definitions in standard English dictionaries. *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 428, 38 P.3d 322 (2002). *Webster's Third New International Dictionary* 443 (2002) gives the definition of "collapse," a noun, as "the action of collapsing : the act or action of drawing together or permitting or causing a falling together."[1] Further, the verb form of "collapse" is defined as "to break down completely : fall apart in confused disorganization : crumble into insignificance or nothingness" and "to fall or shrink together abruptly and completely : fall into a jumbled or flattened mass through the force of external pressure." *Id.*

---

[1] Justice Stephens' dissent in *Sprague* cites an alternate definition of "collapse" where it is defined as "'a breakdown of vital energy, strength, or stamina.'" 174 Wn.2d at 534 (Stephens, J., dissenting) (quoting WEBSTER'S, *supra*, at 443). This definition is not relevant and should not be applied to interpret "collapse" here because it is referring to the emotional and mental collapse of an individual, not the collapse of a structure.

Each definition includes a reference to falling down or falling apart. I would therefore hold that "collapse" in this contract occurs when a building falls, crumbles, or caves in. "Substantial impairment of structural integrity" is not present in any accepted dictionary definition of "collapse."

Courts across the country have defined "collapse" in three major ways— actual collapse, imminent collapse,[2] and substantial impairment of structural integrity. *Cent. Mut. Ins. Co. v. Royal*, 269 Ala. 372, 375, 113 So. 2d 680 (1959) (finding no collapse when there was no actual collapse or rubble on the ground); *Doheny W. Homeowners' Ass'n v. Am. Guar. & Liab. Ins. Co.*, 60 Cal. App. 4th 400, 70 Cal. Rptr. 2d 260 (1997) (holding that policy means collapse must be actual or imminent); *Beach v. Middlesex Mut. Assurance Co.*, 205 Conn. 246, 252-53, 532 A.2d 1297 (1987) (holding that "collapse" is defined as "substantial impairment of the structural integrity"). Although "collapse" was first interpreted under the strict "rubble on the ground" standard, several courts have relaxed the definition of "collapse." *Royal*, 269 Ala. at 375; *Fid. & Cas. Co. of N.Y. v. Mitchell*, 503 So. 2d 870, 871 (Ala. 1987) (holding that rubble on the ground is not required for collapse); *Hennessy v. Mut. of Enumclaw Ins. Co.*, 228 Or. App. 186, 194, 206 P.3d 1184 (2009) (holding that collapse occurs when an object falls some distance).

---

[2] I disagree with State Farm that "imminent collapse" is a valid definition of "collapse" in this contract because it would require reading an element of imminence into the policy. Br. of Appellee at 18 (formatting omitted).

As noted by the majority, several state and federal courts have gone further, recognizing "substantial impairment of structural integrity" as the proper definition of "collapse." Majority at 6; *Am. Concept Ins. Co. v. Jones,* 935 F. Supp. 1220, 1227 (D. Utah 1996); *Beach,* 205 Conn. at 252-253. These courts have used this definition to hold insurance companies liable for types of damage that do not fall under the dictionary definition of "collapse." *Beach,* 205 Conn. at 253 (holding insurance company liable for collapse when foundation contained cracks); *Jones,* 935 F. Supp. at 1223, 1228 (holding insurance company liable for collapse when cracking occurred in floorboards). I would agree with courts who have held that "collapse" does not require a complete falling and flattening of a building. *See Hennessy,* 228 Or. App. at 194. However, I would hold that "substantial impairment of structural integrity" is too far removed from an average person's interpretation of "collapse."

Additionally, "collapse" and "substantial impairment of structural integrity" are nonsynonymous terms that cover different sets of facts. A building can have substantial impairment of structural integrity and not collapse. In *Jones,* 935 F. Supp. at 1223, the policyholder's house was damaged by a water leak. Engineers described the damage as cracking in the floors and walls and concluded that the house had suffered a substantial impairment of structural integrity. *Id.* at 1224. But, the home had not fallen, crumbled, or caved in. *Id.* Thus, a court would likely find that the home in *Jones* had suffered substantial impairment of structural integrity but

4

had not collapsed. Furthermore, a building can collapse, but not suffer substantial impairment of structural integrity. Under a policy that covers collapse of a building, or any part of a building, the crumbling of a nonweight bearing wall would qualify as a collapse. But, the crumbling of a nonweight bearing wall does not substantially impair the structural integrity of a building.

By interpreting "collapse" as "substantial impairment of structural integrity," the majority is turning a simple word into an imprecise legal standard. In order to preserve the commonsense and traditional meaning of "collapse," I would hold that "collapse" in this contract occurs when a building falls, crumbles, or caves in. For the foregoing reasons, I respectfully dissent.

Fairhurst, J.

González, McCloud, J.

Madsen, C.J.