**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HOUSTON GENERAL INSURANCE COMPANY,<br><br>        Plaintiff - Appellee,<br><br>  v.<br><br>FARMINGTON CASUALTY CO,<br><br>        Defendant,<br><br>  and<br><br>ST PAUL FIRE & MARINE INSURANCE COMPANY,<br><br>        Defendant - Appellant. | No. 13-35862<br><br>D.C. No. 2:11-cv-02093-MJP<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, Chief District Judge, Presiding

Argued and Submitted April 4, 2016
Seattle, Washington

Before: HAWKINS, RAWLINSON, and CALLAHAN, Circuit Judges.

---

      [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

St. Paul Fire and Marine Insurance Company ("St. Paul") appeals the district court's entry of judgment in favor of Houston General Insurance Company ("Houston"). We have jurisdiction under 28 U.S.C. § 1291. We largely affirm the decisions of the district court, but intervening state law authority on the proper interpretation of "collapse" in insurance policies like St. Paul's require that we vacate judgment and remand for a new trial.

1.  We review conclusions of law and mixed questions of law and fact de novo. *Lim v. City of Long Beach*, 217 F.3d 1050, 1054 (9th Cir. 2000). We review findings of fact for clear error. *Id.*

2.  St. Paul has not shown that Houston's equitable contribution claim was untimely. St. Paul has not cited any Washington authority directly addressing whether an insurer's action against another insurer for equitable contribution is subject to the insured's contractual policy limitations period. Absent such controlling authority, we decline to disturb the district court's ruling that, under Washington law, the limitations period contained in the contract between St. Paul and Lakewest did not time-bar Houston's contribution claim against St. Paul.

3.  The district court did not clearly err in finding that "Houston paid the $6 million settlement amount to Lakewest based on Houston's liability under the Traders policies." The settlement agreement characterizes the agreement as

resolving all claims "of whatever kind or nature . . . existing between Lakewest and Tokio as a result of, on account of, or in anyway relating to the Lakewest Condominium . . . or the Lawsuit . . . ." The district court was not required to characterize the settlement as a litigation sanction.

4. The district court did not err in concluding that "Houston was not a volunteer because it settled under legitimate threat of civil suit." "An insurer who acts as a volunteer in making payment on behalf of its insured will lose the right to recover contribution from other insurers on the loss," but "[o]ne who settles under threat of civil suit is not a volunteer." *Hartford Ins. v. Ohio Cas. Ins. Co.*, 189 P.3d 195, 199–200 (Wash. App. 2008). Houston settled after Lakewest sued it. The fact that the jury in this case subsequently credited Houston's defense to coverage does not transform Houston into a volunteer. *See id.* at 200.

5. We vacate the district court's judgment based on the jury's finding of "collapse." The district court instructed the jury based on then-existing Washington case law that "collapse" meant "substantial impairment to structural integrity." After the district court entered judgment and after principal briefing was completed on appeal, the Washington Supreme Court clarified the definition of "collapse." *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas.*

3

*Co.*, 352 P.3d 790, 791–92 (Wash. 2015) (en banc).[1]  The issue in *Queen Anne* was whether all or part of a condominium had sufficiently "collapsed" to trigger coverage under a property insurance policy similar to St. Paul's policy here.  *Id.* at 792.  The court in *Queen Anne* held:

> Here the insured requests that "collapse" be interpreted to mean "substantial impairment of structural integrity."  We largely agree.  Of the definitions offered to us, substantial impairment of structural integrity is both reasonable and the most favorable to the insured.  Based on the language of the Policy, however, we caution that "collapse" must mean something more than mere "settling, cracking, shrinking, bulging or expansion."  Also, we note that "structural integrity" of a building means a building's ability to remain upright and "substantial impairment" means a severe impairment.  Taken together, "substantial impairment" of "structural integrity" means an impairment so severe as to materially impair a building's ability to remain upright.  Considering the Policy as a whole, we conclude that "substantial impairment of structural integrity" means the substantial impairment of the structural integrity of all or part of a building that renders all or part of the building unfit for its function or unsafe and, in this case, means more than mere settling, cracking, shrinkage, bulging, or expansion.

*Id.* at 794 (footnote and record citation omitted).  "Substantial impairment of structural integrity" cannot be interpreted "so loosely as to convert an insurance policy into a maintenance agreement by allowing recovery for damage which, while substantial, does not threaten collapse."  *Id.* at 794 n.2 (quoting *Ocean Winds*

---

[1]We apply the law in effect at the time we render our opinion.  *See Henderson v. United States*, 133 S. Ct. 1121, 1126 (2013).  Neither party argues otherwise.

*Council of Co–Owners, Inc. v. Auto–Owner Ins. Co.*, 565 S.E.2d 306, 308 (S.C. 2002)).

The Washington Supreme Court's intervening decision in *Queen Anne* has rendered the jury's instruction on "collapse" erroneous and the error was not harmless. Houston's evidence focused on the integrity of individual members, not necessarily on the "material[] impair[ment] [of] a building's ability to remain upright." *See id.* at 794. Moreover, the jury's notes to the court during deliberations indicated concern or confusion with the definition of collapse, i.e., whether collapse meant that one member or the entire building had to be structurally impaired. We vacate the district court's judgment and remand for a new trial on "collapse" consistent with the definition of collapse provided in *Queen Anne*. As noted by St. Paul, retrial is only necessary for the last three St. Paul policies, in effect from October 1, 1997 through October 1, 2000.

6.   Because we vacate the judgment on other grounds, we do not reach St. Paul's remaining arguments challenging the district court's fashioning of remedies.

**AFFIRMED IN PART, VACATED IN PART, REMANDED.**

Each party to bear its own costs.