IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BREMERTON SCHOOL DISTRICT, | No. 85811-4-I |
| Appellant, | |
| | DIVISION ONE |
| v. | |
| SCHOOLS INSURANCE ASSOCIATION OF WASHINGTON, | UNPUBLISHED OPINION |
| Respondent. | |

SMITH, C.J. — After the Bremerton School District declined to renew Joseph Kennedy's coaching contract due to Kennedy's post-game ritual of praying on the football field with student players, Kennedy sued the District, alleging violations of his First Amendment rights to free speech and free exercise of religion, as well as a myriad of violations under Title VII of the Civil Rights Act of 1964. Kennedy sought only injunctive and declaratory relief, as well as attorney fees.

Following defeat at the federal trial and appellate level, Kennedy's case eventually reached the United States Supreme Court, which reversed and ordered the district court to enter summary judgment in favor of Kennedy. The Supreme Court also awarded Kennedy printing costs incurred on appeal. On remand, the district court granted summary judgment in Kennedy's favor and awarded him attorney fees and costs. The parties later reached a 1.77 million dollar settlement for Kennedy's attorney fees and costs.

The District then sought indemnification from its insurer, the Schools Insurance Association of Washington (SIAW), which denied coverage based on a provision that excluded coverage for "relief or redress in any form other than monetary damages, or for any fees, costs or expenses which an Insured may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief." The District sued SIAW for coverage in King County Superior Court, claiming breach of contract, and moved for judgment on the pleadings. The trial court denied the District's motion, concluding that the attorney fee and cost award was excluded by SIAW's policy.

On appeal, the District asserts that the trial court erred by concluding that the attorney fees and cost award was excluded under the policy because the District was not liable for the fees and costs "as a result of" an adverse judgment for declaratory and injunctive relief. Because the award constitutes fees and cost that the District became obligated to pay as a result of Kennedy's judgment for declaratory and injunctive relief, we conclude that the award is excluded from coverage under the policy and affirm.

FACTS

Background

In August 2016, former Bremerton High School assistant football coach Joseph Kennedy sued the Bremerton School District in federal court after the District declined to renew his coaching contract, in part because Kennedy

2

refused to stop his postgame tradition of praying on the field.[1] Kennedy claimed that the District's actions violated his First Amendment[2] rights to free speech and free exercise of religion, as well as his rights under Title VII of the Civil Rights Act of 1964,[3] which prohibits discrimination on the basis of religion.

Kennedy sought various forms of declaratory and injunctive relief, including reinstatement as assistant coach of the football team, a religious accommodation to pray at the 50-yard line at the conclusion of games, and a declaration that the District's actions violated Kennedy's rights to freedom of speech and free exercise of religion. Kennedy also requested that he be awarded his attorney fees and costs, pre- and post-judgment interest, and all other appropriate relief as the court deemed just and proper.

After conducting initial discovery, the parties cross-moved for summary judgment. The district court granted the District's motion and dismissed Kennedy's claims, concluding that the District's actions were justified because of the risk of a violation of the First Amendment's establishment clause if the District allowed Kennedy to continue with his religious conduct. The Ninth Circuit affirmed.

In January 2022, the United States Supreme Court granted Kennedy's petition for certiorari. On June 27, 2022, the Supreme Court reversed the decision of the Ninth Circuit and determined that Kennedy was entitled to

---

[1] Kennedy v. Bremerton Sch. Dist., No. 3:16-cv-05694-RSL (W.D. Wash.).
[2] U.S. CONST. amend. I.
[3] Pub. L. 88-352, 78 Stat. 241 (1964).

summary judgment on his First Amendment claims. The Supreme Court also entered judgment in favor of Kennedy for the recovery of $5,461.83 in printing and clerk costs incurred in his Supreme Court appeal.

On remand, the district court granted Kennedy's motion for summary judgment as to his free speech and free exercise of religion claims and ordered that Kennedy be reinstated as assistant football coach. The district court also ordered that, as the prevailing party, Kennedy was entitled to reasonable attorney fees and costs.

After the court entered its summary judgment order on Kennedy's First Amendment claims, the parties negotiated a settlement for $1,775,000, the amount of attorney fees and costs owed to Kennedy. As part of the settlement negotiations, the District's insurer, SIAW, agreed to pay $300,000 of the total settlement amount.

Present Matter

In August 2016, after Kennedy filed his lawsuit, the District tendered defense and indemnity[4] to SIAW, which acknowledged receipt of the tender and agreed to defend the District under reservation of rights. SIAW's reservation of rights was based on an exclusion in the Memorandum of Coverage (MOC), which excludes coverage for "[r]elief or redress in any form other than monetary

---

[4] A tender of defense and indemnity notifies another party, typically an insurer, of (1) the pendency of the suit against the defendant, (2) that if liability is found, the defendant will look to the insurer for indemnity, (3) that the notice constitutes a formal tender of the right to defend the action, and (4) that if the insurer refuses to defend, it will be bound in a subsequent litigation between them to determine if coverage applies. Dixon v. Fiat-Roosevelt Motors, Inc., 8 Wn. App. 689, 692, 509 P.2d 86 (1973).

damages, or for any fees, costs or expenses which an Insured may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief."

In August 2022, SIAW sent a letter to the District stating that Kennedy's award for attorney fees and costs was unlikely to be covered under the MOC because they were fees and costs that resulted from an adverse judgment for declaratory and injunctive relief. In September 2022, SIAW denied coverage for the Supreme Court's award of printing and clerk costs.

On January 17, 2023, counsel for SIAW sent a letter to counsel for the District confirming that SIAW's position remained that any award for attorney fees and costs resulting from the lawsuit were not covered under the MOC. Despite denying coverage for the majority of the settlement between Kennedy and the District, SIAW agreed to contribute $300,000 toward the total amount.

In March 2023, the District sued SIAW in King County Superior Court, alleging that SIAW breached their contractual duties under the MOC by denying coverage for the settlement. A few months later, the District moved for judgment on the pleadings, claiming that the attorney fee and cost award was covered under the MOC because the award constituted "monetary damages" rather than "fees, costs or expenses." The trial court disagreed, concluding that the exclusion language was unambiguous and excluded coverage for attorney fees and costs, and denied the District's motion.

The District appeals.

ANALYSIS

Standard of Review

We review a dismissal under CR 12(c) de novo and "identically to a CR 12(b)(6) motion to dismiss for failure to state a claim." P.E. Sys., LLC v. CPI Corp., 176 Wn.2d 198, 203, 289 P.3d 638 (2012). Dismissal is " 'appropriate only when it appears beyond doubt' that the plaintiff cannot prove any set of facts that 'would justify recovery.' " Wash. Trucking Ass'ns v. Emp't Sec. Dep't, 188 Wn.2d 198, 207, 393 P.3d 761 (2017) (quoting San Juan County v. No New Gas Tax, 160 Wn.2d 141, 164, 157 P.3d 831 (2007)). When reviewing a dismissal on a motion for judgment, "[a]ll facts alleged in the complaint are taken as true, and we may consider hypothetical facts supporting the plaintiff's claim." FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). But if a claim remains legally insufficient even under a plaintiff's proffered hypothetical facts, dismissal is appropriate. FutureSelect, 180 Wn.2d at 963.

Likewise, we interpret language in insurance policies as a matter of law and review de novo a trial court's interpretation of the policy language. Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC, 200 Wn.2d 315, 320, 516 P.3d 796 (2022).

Interpretation of Memorandum of Coverage

The District asserts that the trial court erred by concluding that exclusion 5(c) in the MOC applied to Kennedy's award of attorney fees and costs because the District was not liable for the fees "as a result of" declaratory or injunctive

relief. In the alternative, the District maintains that the exclusion is ambiguous and must be interpreted in favor of the District. We disagree.[5] The exclusion plainly excludes from coverage "any fees" resulting from an adverse action for declaratory or injunctive relief. Because Kennedy prevailed in an action for declaratory and injunctive relief and was later awarded fees as the prevailing party, the attorney fee and cost award was "a result of" an adverse action for declaratory or injunctive relief.

We construe insurance policies as a whole, giving the language " 'a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.' " Seattle Tunnel Partners, 200 Wn.2d at 321 (quoting Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co., 183 Wn.2d 485, 489, 352 P.3d 790 (2015)). "Where a term is not defined in the policy, it is assigned its 'plain, ordinary, and popular meaning.' " Seattle Tunnel Partners, 200 Wn.2d at 321 (internal quotation marks omitted) (quoting Queen Anne Park, 183 Wn.2d at 491).

" '[I]f the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists.' " Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 712, 375 P.3d 596 (2016) (alteration in original) (quoting Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005)). "Language in an insurance contract is ambiguous if it is

---

[5] We note that SIAW disagrees that it is an "insurance company" but does not disagree that principles of insurance contract interpretation apply here. Because the parties agree that principles of insurance contract interpretation apply, we do not address whether general contract interpretation principles apply instead.

susceptible to two different but reasonable interpretations." Kut Suen Lui, 185 Wn.2d at 712. If a clause in the policy is ambiguous, we may rely on extrinsic evidence to determine the intent of the parties and resolve the ambiguity. Quadrant Corp., 154 Wn.2d at 172. "Any ambiguity remaining after examination of the applicable extrinsic evidence is resolved against the insurer and in favor of the insured. But while exclusions should be strictly construed against the drafter, a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results." Quadrant Corp., 154 Wn.2d at 172 (citation omitted).

> Here, the MOC provides that
>
> [t]he insurance under any Liability Coverage Part in this MOC does NOT apply to:
>
> . . .
>
> 5. Damages of the following types:
>
>    (a) Any costs, civil fines, penalties or expenses levied or imposed against an Insured arising from any complaint or enforcement action from any federal, state, or local government regulatory agency;
>
>    (b) Punitive damages, exemplary damages or the multiplied portion of any damage award (RICO); or
>
>    (c) Relief or redress in any form other than monetary damages, or for any fees, costs or expenses which an Insured may become obligated to pay as a result of any adverse judgment for declaratory or injunctive relief.
>
>    (d) Any fines and/or attorney fees awarded through any administrative hearing process including but not limited to the Washington Public Records Act.
>
>    (e) Back wages.

(Emphasis and boldface omitted.)

Relevant here is subsection (c). Subsection (c) covers "any fees, costs or expenses" that the District may become obligated to pay as the result of any adverse judgment for declaratory or injunctive relief. "Any" is defined as "one indifferently out of more than two" and "all;" it is "used as a function of a word esp[ecially] in interrogative and conditional expressions to indicate one that is not a particular or definite individual of the given category." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (2002). The attorney fee and cost award at issue in this case is clearly excluded from coverage by this subsection because it is a "fee" and "cost." Giving the exclusion's language a fair and reasonable construction, "any fees [or] costs" plainly includes attorney fees and costs. To interpret "any fees, costs or expenses" not to include attorney fees and costs would result in a strained and forced construction of the exclusion.

Still, the District maintains that subsection (c) does not apply, or does not exclude coverage, for several reasons, none of which are persuasive. The District first contends that the latter half of subsection (c) refers to fees, costs or expenses the policyholder incurs to *implement or comply with* the injunctive or declaratory relief awarded, and not attorney fees awarded as a result of a judgment for declaratory or injunctive relief. This interpretation ignores the plain meaning of the exclusion's language. The exclusion excludes from coverage *any* fees that an insured may become obligated to pay as a result of an adverse judgment and does not specifically address costs of implementation. While the exclusion could be reasonably read as excluding *both* (1) attorney fees resulting from an injunction or declaratory judgment and (2) any other costs resulting from

9

that judgment (such as the costs and expenses to implement that judgment), it is a strained interpretation to say that only implementation costs are excluded. In order for the District's interpretation to make sense, this court would need to modify the exclusion to replace the words "as a result of" with the words "in order to implement." The District's interpretation is not reasonable.

In a related argument, the District points to SIAW's initial reservation of rights letter, which noted that "injunctive and declaratory relief and reinstatement are not covered" but did not mention whether the exclusion applied to attorney fee and cost awards, as evidence supporting its interpretation of the exclusion. While SIAW may not have expressly noted at that early stage that attorney fee and costs awards may not be covered, the District overlooks the nature of SIAW's letter: to advise the District on its initial stance based on the facts of the claim available at the time. The letter expressly states that it is not "a waiver of any policy defense that may be found to limit or preclude coverage." Finally, we note that SIAW's initial letter included the entirety of exclusion 5(c)'s language, making clear that "any fees, costs or expenses" that the District may become obligated to pay as the result of Kennedy's action for declaratory and injunctive relief would not be covered under the policy.

Second, the District asserts that Kennedy's attorney fee and cost award is not "a result of" a declaratory or injunctive judgment because the Supreme Court did not enter a judgment for declaratory or injunctive relief and because the district court determined that Kennedy was entitled to his fees under 42 U.S.C. § 1988 independent of entering a judgment for declaratory or injunctive relief.

10

This argument ignores the nature of appellate review and 42 U.S.C. § 1988. As an appellate court, the Supreme Court does not enter judgments—it directs the trial court to do so, exactly as it did in this case. As a result of the Supreme Court's decision, the district court here entered judgment in Kennedy's favor. The Supreme Court awarded Kennedy his printing and clerk's costs because it determined that Kennedy should prevail on his claims for declaratory and injunctive relief. These necessary procedural steps are interrelated to Kennedy's judgment for declaratory and injunctive relief.

The District's alternative arguments to this point, that an award of attorney fees under 42 U.S.C. § 1988 is not dependent on first obtaining relief and that the entering of a judgment is an "intervening act" that makes a fee award under 42 U.S.C. § 1988 unavailable, are simply not accurate. In order for a party to recoup fees under 42 U.S.C. § 1988, they must first prevail in a civil rights action. A court may then, in its discretion, award the prevailing party their reasonable attorney fees. Again, these are interrelated procedural steps that must be completed before a party may recoup fees under 42 U.S.C. § 1988. Here, Kennedy could only request attorney fees and costs under 42 U.S.C. § 1988 due to the fact that a judgment in a civil rights action for declaratory and injunctive relief was entered in his favor.

Third, the District argues that its interpretation is consistent with the MOC's intent to insure the District for civil rights and employment claims. In support of this assertion, the District points to the MOC's definition of "Limit of Insurance," which provides that the limit of insurance is "[t]he sums for which an

Insured is legally liable by reason of a judgment, . . . or a settlement executed by you and the claimant, and shall include all costs arising out of an Accident, Occurrence or Wrongful Act." (Boldface omitted.) The District then notes that it "makes no sense for the MOC's coverage for attorneys' fees to depend on the nature of relief sought by the plaintiff." This argument ignores that the MOC also contains other exclusions concerning coverage. Additionally, it overlooks that the parties were free to contract as they wanted.

In a related argument, the District notes that another subsection of Exclusion 5, subsection (d), specifically excludes from coverage "[a]ny fines and/or attorneys fees awarded through any administrative hearing process," which indicates that when SIAW intended to exclude attorney fees, it expressly stated as such. But this argument fails to consider that "any fees" is broader than "attorney fees" and that "any fees" can reasonably be interpreted to include "attorney fees."

Fourth, The District contends that its interpretation gives effect to all the terms used in the exclusion and urges this court to interpret "monetary damages" to include attorney fees and costs. The District asserts that an ordinary person would interpret an award of attorney fees as "an award of money," and thus, "monetary damages." This argument ignores the plain language of the exclusion and the exclusion's sentence structure. Subsection (c) provides that no coverage exists for "[r]elief or redress in any form other than monetary damages, *or* for any fees, costs or expenses." (Emphasis added.) A reasonable, ordinary person would deduce from the exclusion's language that "monetary damages" do

not encompass attorney fees because the exclusion also provides that "any fees" are not covered.

The District's assertion that the term "monetary damages" is ambiguous is similarly unavailing when viewed in the context of the MOC. Exclusion 5 begins with a broad heading of "damages." It then references different types of damages that may result: civil fines or penalties, punitive damages, exemplary damages, monetary damages, any fees, costs, or expenses, any fines awarded through administrative proceedings (except for attorney fees), and back wages. Though the MOC does not define the broad category of "damages," by listing the various types of damages separately, exclusion 5 makes clear that within this broad category of damages, monetary damages are separate and distinct from fees, costs, or expenses. An ordinary person reading exclusion 5 would conclude that "any fees, costs or expenses" are separate from "monetary damages."

Fifth, the District claims that City of Kirtland v. W. World Ins. Co., 43 Ohio App. 3d 167, 540 N. E. 2d 282 (Ohio Ct. App. 1988) is analogous to the present case. The insurance policy in Kirtland contained the following exclusion:

> The Company shall not be liable to make payment for Loss in connection with any claim made against the Insureds allegedly, based upon or arising out of . . .
>
> 4(a) Claims, demands or actions seeking relief, or redress, in any form other than money damages;
>
> (b) For fees or expenses relating to claims, demands or actions seeking relief or redress, in any form other than money damages.

43 Ohio App. 3d at 169 (alteration in original). The policy defined "damages" as "only those damages which are payable because of personal injury," but did not

provide a definition for "money damages." <u>Kirtland</u>, 43 Ohio App. 3d at 169. The <u>Kirtland</u> court also noted that a senior claims examiner for the insurance company had characterized the attorney fee award as a money damage. 43 Ohio App. 3d at 169. The court reasoned that the insured should not have to "bear the burden of [the insurer's] own uncertainty as to a term in a policy [the insurer] wrote." <u>Kirtland</u>, 43 Ohio App. 3d at 169-70. The court concluded that "[s]ince the term 'money damages' was not defined in the policy . . . the attorney fees awarded appellee were money damages." <u>Kirtland</u>, 43 Ohio App. 3d at 170.

<u>Kirtland</u> is distinguishable from the case at hand. Exclusion 5 is much more specific than exclusion 4 in <u>Kirtland</u> and provides several examples of uncovered damages under the MOC. And unlike the present case, the <u>Kirtland</u> policy did not exclude damages resulting specifically from a judgment for equitable relief. <u>See</u> <u>Kirtland</u>, 43 Ohio App. 3d at 169. Moreover, the <u>Kirtland</u> court did not interpret the exclusion language at issue in that case—it relied on a statement from the insurer's claims adjuster to determine that money damages included attorney fee awards.

Lastly, the District maintains that, at the very least, the exclusion is ambiguous and must be interpreted in its favor. But despite the District's assertion to the contrary, there is no reasonable interpretation of the exclusion that would require coverage. The only reasonable interpretation of the exclusion excludes coverage for an award of attorney fees and costs resulting from an adverse judgment for declaratory or injunctive relief.

Because the attorney fee and cost award is excluded from coverage by the MOC and because the provision is not ambiguous, we conclude that the trial court did not err by denying the District's motion for judgment on the pleadings.

<u>Attorney Fees on Appeal</u>

The District asserts that it is entitled to its attorney fees and costs if it prevails on appeal.

"An insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees, regardless of whether the duty to defend is at issue." <u>Olympic S.S. Co., Inc. v. Centennial Ins. Co.</u>, 117 Wn.2d 37, 54, 811 P.2d 673 (1991).

Here, the District does not prevail on its coverage claim on appeal and it is not entitled to its attorney fees.

Affirmed.

Smith, C.J.

WE CONCUR:

Birk, J.     Hazelrigg, A.C.J.